UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEPHEN A. MILLER, | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:12-CV-1095 (JCH) |
| | : | |
| v. | : | |
| | : | |
| JOHN C. SMIRGA, et al., | : | JUNE 13, 2013 |
| Defendants. | : | |

**RULING RE: DEFENDANTS' MOTION TO DISMISS (DOC. NO. 17)**

**I.   INTRODUCTION**

Plaintiff Stephen A. Miller commenced this action against John C. Smriga, Kevin T. Kane, and Juliana Waltersdorff (collectively, the "Individual Defendants"), in their official capacities as Connecticut State's Attorneys, and the State of Connecticut (with the Individual Defendants, the "defendants") under section 1983 of title 42 of the U.S. Code ("section 1983").  Miller alleges that the Individual Defendants violated his rights under the Sixth Amendment and the Due Process Clause of the Fifth Amendment of the U.S. Constitution by falsely arresting him and taking other actions against him while they were prosecutors for the State.  Am. Compl. (Doc. No. 8) ¶¶ 1–5.  Miller seeks $1 billion in damages.

Before this court is the defendants' Motion to Dismiss.  The defendants move to dismiss the Amended Complaint because Miller has sued under the wrong constitutional amendments, because the State is protected from his suit by the Eleventh Amendment, and because the Individual Defendants are entitled to prosecutorial and qualified immunity.  See Defs.' Mot. Dismiss (Doc. No. 17) at 1–2.

## II. FACTUAL BACKGROUND[1]

Miller[2] contacted the office of State's Attorney John Smriga to report that the Bridgeport Police Department had allegedly failed to protect him after he made a complaint that an individual named Dennis Shaw had sent him a threatening email on January 13, 2010.  Am. Compl. ¶ 1.  Smriga was unavailable, so Miller recorded a message on Smriga's office voicemail machine.  Id. ¶ 2.  Miller alleges that Smriga did not return his message, but that he directed the state police to arrest Miller for a false charge of harassment in the second degree.  Id.  Miller alleges that the application for his arrest warrant was "full of false claims" against him, including references to a handgun, false criminal convictions, and a false mental health claim.  Id. ¶ 3.

Miller also alleges that Kane refused to supervise his staff and that Waltersdorff requested and then rescinded a court order of protection against Miller that amounted to a "flagrant, deliberate, malicious concoction."  Id. ¶¶ 4–5.

## III. STANDARD OF REVIEW

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether the plaintiff has stated a legally cognizable claim by making allegations that, if true, would show that the plaintiff is entitled to relief.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief'" (alteration in original)).  The court assumes the factual allegations of

---

[1] For purposes of the Motion to Dismiss, this court takes the facts alleged in the Complaint as true and draws all inferences in plaintiff's favor.  See Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003).

[2] Paragraphs 1 and 2 of the Amended Complaint refer three times to the "defendant," but it appears that Miller is referring to himself, the plaintiff.  Construing the Amended Complaint liberally, this court will consider the references to the "defendant" to be references to Miller.

the complaint to be true, Hemi Grp., LLC v. City of New York, 130 S.Ct. 983, 986–87 (2010), and from those allegations, draws all reasonable inferences in the plaintiff's favor, Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009).  However, the tenet that a court must accept a complaint's allegations as true is inapplicable to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (citing Twombly, 550 U.S. at 555).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 556).

The plausibility standard does not impose a universal heightened fact pleading standard.  Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008).  The plausibility standard does not "require[] a complaint to include specific evidence [or] factual allegations in addition to those required by Rule 8." Arista Records, LLC v. Doe 3, 604 F.3d 110, 119 (2d Cir. 2010); see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (holding that dismissal was inconsistent with the "liberal pleading standards set forth by Rule 8(a)(2)").  However, the plausibility standard does impose some burden to make factual allegations supporting a claim for relief.  As the Iqbal court explained, it "does not require detailed factual allegations, but it demands more than an unadorned, the-

defendant-unlawfully-harmed-me accusation.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  Iqbal, 556 U.S. at 678 (alterations, citations, and internal quotation marks omitted).  Under the Second Circuit's gloss, the plausibility standard is "flexible," obliging the plaintiff "to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible."  Boykin, 521 F.3d at 213 (emphasis in original) (citation omitted); accord Arista Records, 604 F.3d at 120. Further, the court must construe pro se pleadings "broadly, and interpret them to raise the strongest arguments that they suggest."  Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000) (citation and internal quotation marks omitted).

## IV. DISCUSSION

### A. The Eleventh Amendment

The defendants argue that Miller's claims against the State, and against the Individual Defendants in their official capacities, are barred by the Eleventh Amendment of the U.S. Constitution.  Defs.' Mem. Mot. Dismiss (Doc. No. 17-1) at 3–4.  Miller argues that the Eleventh Amendment does not apply because the Eleventh Amendment bars suits by citizens of "another State," and Miller "is a citizen of Connecticut, not another State."  Pl.'s Opp. to Defs.' Mot. Dismiss (Doc. No. 25) ("Pl.'s Opp.") at 12.[3]

"[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."  Kentucky v. Graham, 473 U.S. 159, 169 (1985).  The Eleventh Amendment applies to bar suits

---

[3] Miller also argues that he "prefers to put aside tangential arguments about the 11th Amendment."  Pl.'s Opp. at 7.  This court's oath will not allow that.

against an unconsenting state "by her own citizens as well as by citizens of another State." Edelman v. Jordan, 415 U.S. 651, 663 (1974). Further, the prohibition on damages actions against the state extends to state agencies and officials. Alabama v. Pugh, 438 U.S. 781, 781 (1978) ("[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies."); Kentucky, 473 U.S. at 170 ("[R]espondents . . . freely concede that money damages . . . could not have been awarded against [the State]; respondents cannot reach this same end simply by suing State officials in their official capacity.").

Here, Miller seeks damages against the State of Connecticut and three state officials in their official capacities. See Am. Compl. ¶¶ 6, 8. Nowhere in the Amended Complaint does Miller seek injunctive relief. See generally id. Accordingly, Miller's claims are dismissed as barred by the Eleventh Amendment.[4]

B.   Prosecutorial Immunity

The Individual Defendants also argue that all claims against them are barred because they are entitled to absolute or qualified immunity. Defs.' Mem. Mot. Dismiss at 6–11.

"Although section 1983 imposes liability upon 'every person' who deprives another of a constitutional right under color of state law, the doctrines of absolute and qualified immunity shield prosecutors . . . from liability related to their official acts." Day v. Morgenthau, 909 F.2d 75, 77 (2d Cir. 1990) (citing Imbler v. Pachtman, 424 U.S. 409, 417–19 (1976)). Whether a state prosecutor is entitled to absolute or qualified immunity

---

[4] Even if the Eleventh Amendment did not apply to bar Miller's damages action, the action would still fail because it is not cognizable under section 1983. Neither a state nor a state official sued in his official capacity for money damages is a "person" for purposes of a section 1983 claim. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983.").

depends more on "the function being performed than on the office of the defendant." Id. (citing Robinson v. Via, 821 F.2d 913, 918 (2d Cir. 1987)).  A state prosecutor is "absolutely immune from liability under section 1983 for acts 'within the scope of his duties in initiating and pursuing a criminal prosecution,'" id. (quoting Imbler, 424 U.S. at 410), and if he is "engaged in activities that are 'intimately associated with the judicial phase of the criminal process,'" id. (quoting Imbler, 424 U.S. at 430).  On the other hand, a prosecutor is entitled to qualified immunity from damages actions for that prosecutor's "administrative or investigative activities," so long as the prosecutor shows that "his acts were objectively reasonable." Id. (citing Robison, 821 F.2d at 920).

The Second Circuit has held specifically that a prosecutor is entitled to absolute immunity related to actions in filing a criminal information and procuring an arrest warrant. Barr v. Abrams, 810 F.2d 358, 362 (2d Cir. 1987).  There, the defendant, a New York Assistant Attorney General, filed a criminal information charging Barr with criminal contempt.  Based on the information, a judge signed an arrest warrant, which was executed by investigators on the staff of the Attorney General. Id. at 360.  Barr claimed, among other things, that the defendant acted maliciously in instigating criminal proceedings and obtaining an arrest warrant against him. Id.  The court held that those actions were the type of "quasi-judicial" activities that are entitled to absolute immunity under Imbler. Id. at 361.  Barr also alleged that the defendant had "instructed and acted in concert with" the investigators "to effect his arrest and imprisonment." Id. at 362. Noting a meaningful distinction between "filing the criminal information and procuring an arrest warrant, on the one hand, and executing the arrest warrant, on the other," the court nonetheless held that the defendant was entitled to absolute immunity because

6

Barr failed to allege any actions by the defendant relating to "impropriety in the manner in which he was arrested." Id.

Here, the allegations of the Amended Complaint that are directed at the Individual Defendants' actions are related to the procurement of the arrest warrant and the charges against Miller, not to the effecting of his arrest or his imprisonment. The Amended Complaint alleges that Smriga made false claims in directing the arrest of Miller, in his "arrest warrant application," and in "enhanc[ing] the false charge" against Miller, Am. Compl. ¶¶ 2–3; that Kane "refused to supervise his staff," id. ¶ 4; and that Waltersdorff requested a court order of protection "trying to make it appear that [Miller] posed a physical danger," id. ¶ 5.[5] Indeed, the Amended Complaint nowhere plausibly "alleges any impropriety in the manner in which [Miller] was arrested," see Barr, 810 F.2d at 362 (emphasis added), and appears to not discuss the manner of his arrest or allege that the defendants were present at his arrest, see generally Am. Compl.[6]

Based on the above, the court concludes that Miller's claims against the Individual Defendants are barred by absolute immunity because the actions alleged were quasi-judicial activities "intimately associated with the judicial phase of the criminal process." See Imbler, 424 U.S. at 430. Accordingly, the court needs not analyze whether the Individual Defendants are entitled to qualified immunity.

    C.    <u>Failure to State a Claim</u>

Because the Eleventh Amendment bars damages actions against the state and

---

[5] The Amended Complaint does not specify in what context the alleged actions of Kane and Waltersdorff occurred. However, it is reasonable to read the Amended Complaint as alleging that those actions took place in the same or similar context as Smriga's alleged actions, as no other context is alleged. See generally Am. Compl.

[6] As further support for the court's reading of the Amended Complaint, Miller argues in his Opposition to the defendants' Motion to Dismiss that, as of the date he filed his Opposition, he had never even "met or spoken to" Smriga. Pl.'s Opp. at 5.

its officials, and because the Individual Defendants are further entitled to absolute immunity for their alleged actions, the court does not need to examine whether Miller has stated claims under the Fifth and Sixth Amendments upon which relief may be granted.

### V. CONCLUSION

For the foregoing reasons, the defendants' Motion to Dismiss (Doc. No. 17) is **GRANTED** in its entirety. In view of the bases for this Ruling, the court does not grant Miller the right to replead. The clerk is directed to close the case.

**SO ORDERED.**

Dated at New Haven, Connecticut, this 13th day of June, 2013.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge